UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>EFG BANK S.A., f/k/a EFG Private Bank S.A.; EFG BANK (MONACO) S.A.M., f/k/a EFG Eurofinancière d'Investissements S.A.M.; and EFG BANK & TRUST (BAHAMAS) LIMITED, as successor-in interest to Banco Atlántico (Bahamas) Bank & Trust Limited,<br><br>Defendants. | Adv. Pro. No. 12-01690 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza

New York, NY 10111
By:     David Sheehan
        Brian W. Song
        Shawn P. Hough

*Attorneys for the EFG Defendants*
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022
By:     Zachary D. Rosenbaum
        Adam M. Lavine
        Donna (Dong Ni) Xu

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', EFG Bank S.A., f/k/a EFG Private Bank S.A.

("EFG Bank"), EFG Bank (Monaco) S.A.M., f/k/a EFG Eurofinancière d'Investissements

S.A.M. ("EFG Monaco"), and EFG Bank & Trust (Bahamas) Limited ("EFG Bahamas"), as

successor-in-interest to Banco Atlántico (Bahamas) Bank & Trust Limited ("Banco Atlántico")

(collectively, the "EFG Defendants"), motion to dismiss the complaint of Irving Picard, the

trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC

("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer

property.  EFG Defendants seek dismissal for lack of personal jurisdiction and for failure to

allege that the subsequent transfers contained customer property.  EFG Defendants argue that the

§ 546 safe harbor applies to the Trustee's claims and that they are entitled to the defense of good

faith.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

<u>**Jurisdiction**</u>

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08–01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by these Defendants and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on June 06, 2012. (Compl., ECF[1] No. 1). The Trustee filed an amended complaint (the "Amended Complaint") on October 14, 2022. (Am. Compl., ECF No. 100).

The EFG Defendants share a parent company, EFG International AG, which is a global private banking group headquartered in Zurich, Switzerland. (*Id.* ¶ 56). EFG Bank is an *Aktiengesellschaft* incorporated and organized under the laws of Switzerland. (*Id.* ¶ 53).

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01690-cgm.

Defendant EFG Monaco was a *société anonyme* incorporated and organized under the laws of Monaco. (*Id.* ¶ 54). Defendant EFG Bahamas is a Bahamian company located in Nassau, The Bahamas. (*Id.* ¶ 55). Following a June 2005 agreement, EFG Bahamas acquired the assets and liabilities, including bank accounts, of Banco Atlántico. (*Id.*). Banco Atlántico was thereafter dissolved. (*Id.*). EFG Bahamas then became the transferee of any subsequent transfers of BLMIS customer property received in the name of Banco Atlántico. (*Id.*).

Via the Amended Complaint the Trustee seeks to recover $298,443,562 in subsequent transfers made to EFG Defendants. (*Id.* ¶ 2). The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma"), and Fairfield Lambda Limited ("Fairfield Lambda") (collectively, the "Fairfield Funds"). (*Id.*). The Fairfield Funds are considered "feeder funds" of BLMIS because the intention of the funds was to invest in BLMIS. (*Id.* ¶ 3) ("Fairfield Sentry maintained at least 95% of its assets in its BLMIS customer accounts. Some of the subsequent transfers from Fairfield Sentry came through Fairfield Sigma and Fairfield Lambda, which each invested 100% of their assets in Fairfield Sentry.").

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 85). In 2011, the Trustee settled with the Fairfield Funds. (*Id.* ¶ 86). As part of their settlement, Fairfield Sentry and Fairfield Sigma consented to judgments in the amounts of $3.054 billion and $752.3 million, respectively. (Consent Js., 09-01239-cgm, ECF Nos. 109–10). Only $70 million has been paid to the BLMIS customer property estate. (Settlement Agreement, 09-01239-cgm, ECF No. 169). The Trustee then

commenced a number of adversary proceedings against subsequent transferees, like Defendants, to recover the approximately $3 billion in missing customer property.

In their motion to dismiss, EFG Defendants argue that the Trustee has failed to plead personal jurisdiction and that the complaint fails to allege that the subsequent transfers are of customer property.  EFG Defendants further argues that the § 546 safe harbor and the defense of good faith should apply.  The Trustee opposes the motion to dismiss.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Discussion

### Personal Jurisdiction

EFG Defendants object to the Trustee's assertion of personal jurisdiction.  (Mem. L. 7, ECF No. 104).  In the Amended Complaint, the Trustee argues that EFG Defendants purposefully availed themselves of the laws of the United States and New York.  (Am. Compl. ¶¶ 63–84).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'"  *Id.*  (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).  In the absence of discovery, "a plaintiff's prima facie showing of jurisdiction 'may be established solely by allegations.'"  *Paroni v. GE UK Holdings Ltd.*, 2021 U.S. Dist. LEXIS 148930 (N.D.N.Y. 2021) (quoting *Ball*, 902 F.2d at 197).

In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that EFG Defendants "knowingly directed funds to be invested with New York-based BLMIS through the Fairfield Funds . . . ."  (Am. Compl. ¶ 64, ECF No. 104).  This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation.  At the pre-discovery stage, the allegations need not be factually supported.  *See Dorchester Fin. Sec. Inc.*, 722 F.3d at 85 (explaining that an averment of facts is necessary only after discovery).  That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'"  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158,

163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008));

*BNP Paribas S.A.*, 594 B.R. at 187.

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Bureau of Labor Ins.*, 480 B.R. at 517.

In the Amended Complaint, the Trustee alleges that each of the EFG Defendants "knowingly directed funds to be invested with New York-based BLMIS through the Fairfield

Funds . . . ." (Am. Compl. ¶ 64, ECF No. 100). EFG Defendants were given Fairfield Sentry's

private placement memorandum, which informed it of the following:

> "Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS;
> BLMIS performed all investment management duties for these assets; . . . BLMIS
> was the executing broker for Fairfield Sentry's investments, and purportedly
> operated and executed the SSC Strategy on the fund's behalf; BLMIS was the
> custodian of Fairfield Sentry's investments with BLMIS; BLMIS's SSC Strategy
> purportedly involved the purchase of U.S. equities, U.S. options, and U.S.
> Treasury Bills, and the decisions regarding which U.S. securities to purportedly
> purchase, and when to make such purchases, were made by BLMIS in New York;
> and BLMIS was 'essential to the continued operation of' Fairfield Sentry."

(*Id.* ¶ 65). EFG Capital, another subsidiary of the parent company of the EFG Defendants, "met

with [Fairfield Greenwich Group ("FGG")] in New York on behalf of Defendants." (*Id.* ¶¶ 57,

66).

EFG Defendants executed subscription agreements with Fairfield Sentry, which

contained a New York choice of law provision and wherein they consented to jurisdiction in

New York for claims with respect to the subscription agreements and Fairfield Sentry. (*Id.* ¶¶

69–70). These subscription agreements required the EFG Defendant to send all subscription

payments to bank accounts in New York for ultimate deposit in Fairfield Sentry's bank account.

(*Id.* ¶ 71).

EFG Defendants also "conducted business in New York through EFG Capital, a

Delaware corporation that operated from offices in New York and Miami, Florida." (*Id.* ¶ 78).

The EFG Defendants relationship with the Fairfield Greenwich Group were managed by this

affiliate by 2003. (*Id.* ¶ 79). The Miami-based affiliate, EFG Capital, "coordinated Defendants'

transfers to and from the Fairfield Funds" by executing subscription agreements as "attorneys-in-

fact," signing Fairfield Lambda redemption requests, transmitting Fairfield Sigma subscription

agreements to FGG's New York offices, and corresponding with the EFG Defendants.  (*Id.* ¶ 80).

EFG Capital made multiple visits to BLMIS's offices in New York on behalf of the EFG Defendants.  (*Id.*).  EFG Capital's Chairman, Victor Echevarria, had met with FGG to discuss Fairfield Sentry by 1998.  (*Id.* ¶ 76).  In the late 1990's Echevarria "visited BLMIS's office with FGG representatives" where he discussed the split strike conversion strategy ostensibly employed by BLMIS.  (*Id.* ¶ 77).  Romy Cabrera, a hedge fund specialist at EFG Capital, met with FGG at FGG's New York offices "to review EFG Bank's existing investments in Fairfield Sentry."  (*Id.* ¶ 76).

The Defendants argue EFG Capital's actions should not be imputed the EFG Defendants as there are no allegations that EFG Capital acted on behalf of the EFG Defendants.  (Mem. L. 15, ECF No. 104).

EFG Defendants are not natural person and can act "solely through the instrumentality of their officers or other duly authorized agents." *45 John Lofts, LLC v. Meridian Capital Grp., LLC* (*In re 45 John Lofts, LLC*), 599 B.R. 730, 743. Under New York law, "the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals." *Id.* (quoting *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010)).  An agent's knowledge and acts are imputed to a corporate defendant.  *45 John Lofts*, 599 B.R. at 743.

Common ownership "gives rise to a valid inference as to the broad scope of the agency," so long as the services performed are more than "mere solicitation of business for the out-of-state entity. *Dorfman v. Marriott Int'l Hotels, Inc.*, No. 99 CIV 10496 (CSH), 2002 WL 14363, at *3 (S.D.N.Y. Jan. 3, 2002) (quoting *Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 536, 227

N.E .2d 851, 281 N.Y.S.2d 41 (1967)).  To show that the "corporation doing business in New York is an agent of a related foreign corporation, the plaintiff must show that the former does all the business which [the foreign corporation] could do were it here by its own officials." *Dorfman*, 2002 WL 14363, at *3.  The services performed by the alleged agent must be "sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available."  *Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 95 (2d Cir. 2000).  The Court will look to "the realities of the relationship in question rather than the formalities of agency law."  *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, No. 18 Civ. 8152 (JFK), 2021 WL 2000371, at *7 (S.D.N.Y. May 19, 2021) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 360 (S.D.N.Y. 2004)); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986)).

The Trustee has alleged that EFG International is the ultimate parent company of each of the Defendants and that U.S.-based EFG Capital, an indirect subsidiary of EFG International, acted as EFG Defendants' agent with respect to investments in and redemptions from the Fairfield Funds.  (Am. Compl. ¶¶ 56–57, 60, 78, 80).  The Amended Complaint alleges that EFG Defendants along with EFG Capital and EFG International "collectively functioned as one entity for the purposes" of personal jurisdiction. (*Id.* ¶ 58).  EFG Capital advertised its ability to access the organization's "extensive global infrastructure, and bring together the ideas for [each] portfolio."  (*Id.* ¶ 59).  EFG Defendants maintained significant and continuous operations through EFG Capital and made EFG Capital responsible for activities of EFG Defendants in New York, including "managing the Defendants' relationships with [FGG] . . . ." (*Id.* ¶¶ 60–61).  The EFG Defendants and EFG Capital and EFT International acted as a cooperative network.  (*Id.* ¶ 60).  The work performed by EFG Capital was for the benefit of the EFG Defendants as it

allowed them to accomplish their goal of investment with the Fairfield Funds. The work done was important enough that the EFG Defendants would not have been able to invest in the Fairfield Funds without acting in New York themselves.

The Court is satisfied that the activities of EFG Capital may be imputed to the EFG Defendants for jurisdictional purposes. The Complaint does not rely on EFG Capital's activities alone and makes further detailed allegations concerning the Defendants.

<u>Further Contacts of EFG Bank</u>

EFG Bank designated a bank account in Stamford, Connecticut to receive the proceeds of redemptions from Fairfield Sentry and then directed and received the proceeds of redemptions from Fairfield Sentry in that account. (*Id.* ¶ 72). EFG Bank used its own account at UBS AG in New York to send subscription payments to Fairfield Sigma. (*Id.* ¶ 75). EFG Bank reviewed "BLMIS trade confirmations listing BLMIS as a member of SIPC" by 2003. *(Id.* ¶ 82).

EFG Bank met with either FGG or Madoff in New York, where it was "able to confirm that their investments in the BLMIS Feeder Funds were managed in New York." *(Id.* ¶ 66). Mats Pehrsson, a senior vice president of EFG Bank, "composed a memorandum and disseminated it to EFG Bank and EFG Capital, identifying New York-based BLMIS as the 'manager' of Defendants' investments in Fairfield Sentry." *(Id.* ¶ 67). EFG Bank "visited and regularly communicated with the Fairfield Funds' New York-based representatives," including in 2003 NS 2004 by Mats Pehrsson and Jerome Schonbachler, another EFG Bank senior vice president, at FGG's offices in New York to discuss investments with Fairfield Sentry and review information concerning investments with BLMIS; in 2005 by Jerome Schonbachler with FGG at its New York offices to "discuss guaranteed capacity for EFG Bank in various FGG-managed funds, including Fairfield Sentry;" and in 2006 by Jerome Schonbachler at FGG's New York

offices with "FGG's Amit Vijayvergiya . . . to address questions EFG Bank had regarding

Fairfield Sentry." (*Id.* ¶ 76).   EFG Bank also met with Madoff personally, including in 2005 by

Jerome Schonbachler

Further Contacts of EFG Bahamas

In the Amended Complaint, the Trustee alleges that Banco Atlántico met with either FGG

of Madoff in New York, where it was "able to confirm that their investments in the BLMIS

Feeder Funds were managed in New York." (*Id.* ¶ 66).   Banco Atlántico and then EFG Bahamas

selected and used a New York bank account "to wire subscriptions to and receive redemption

proceeds from Fairfield Sentry." (*Id.* ¶¶ 73–74).   Banco Atlántico reviewed "BLMIS trade

confirmations listing BLMIS as a member of SIPC" by 2003.  *(Id.* ¶ 82).

In November 2003, Banco Atlántico's Director General and General Manager, Sergio

Miguez Martin and Miguel Coello, "met with FGG at FGG's offices in New York to discuss

Fairfield Sentry, Madoff, and BLMIS." (*Id.* ¶ 76).   In November 2003, Martin and Coello met

with Madoff and FGG representatives at BLMIS's office in New York where they discussed

Fairfield Sentry and the split strike conversion strategy ostensibly employed by BLMIS.  (*Id.* ¶

77).

The Amended Complaint contains allegations that are legally sufficient to constitute a

prima facie showing of jurisdiction over the EFG Defendants.  *Dorchester Fin. Sec. Inc. v.

Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).   "[A]lthough physical presence in the forum is

not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person

or through an agent, goods, mail, or some other means—is certainly a relevant contact."  *Walden

v. Fiore*, 571 U.S. 277, 285 (2014).  Defendants "intentionally tossed a seed from abroad to take

root and grow as a new tree in the Madoff money orchard in the United States and reap the

benefits therefrom." *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). EFG Defendants' alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against EFG Defendants for monies they received from the Fairfield Funds. (Am. Compl. ¶¶ 92–122, ECF No. 100). These allegations are directly related to their investment activities with BLMIS via the Fairfield Funds. *BNP Paribas S.A.,* 594 B.R. at 191 (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from

a Bank of New York account in New York, and were the proximate cause of the injuries that the

Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over EFG Defendants is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal

quotations omitted). Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. EFG Defendants are not burdened by this

litigation. EFG Defendants actively participated in this Court's litigation for nearly ten years.

(*See, e.g.,* Mem. L. in Support of Mot. to Dismiss Based on Extraterritoriality, ECF No. 39). It is

represented by U.S. counsel and intentionally invested in the Fairfield Funds. Further, EFG

Defendants used bank accounts in New York. (Am. Compl. ¶¶ 72–74). The forum and the

Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court.

*Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr.

S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R.

274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82

(Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627

B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019)

("The United States has a compelling interest in allowing domestic estates to recover

fraudulently transferred property.").

By alleging that EFG Defendants intentionally invested in BLMIS, the Trustee has met

his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.

And by alleging that Defendants used New York bank accounts, the Trustee has met his burden

of alleging jurisdiction over each transfer that received through that New York bank account.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy

into feeder funds that placed all or substantially all of their assets with Madoff Securities, they

knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The

Trustee has made a prima facie showing of personal jurisdiction with respect to all of the

Fairfield Fund subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts

that allow the Court to draw a "reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an

agreement does not impose a probability requirement at the pleading stage; it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations

are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover over $298 million in subsequent transfers made to EFG Defendants by Fairfield Sentry, Fairfield Sigma, Fairfield Lambda. (Am. Compl. ¶ 2, ECF No. 100).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e)),* No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013).  "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer."  *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l*

*Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff's burden at the pleading

stage does not require exact accounting of the funds at issue.  *BNP Paribas*, 594 B.R. at 195.

Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much –

of the purported transfers to establish an entity as a subsequent transferee of the funds."  *Id.*

However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar

accounting of the exact funds at issue."  *Id.*

While the Trustee must allege that the initial transfer from BLMIS to the Fairfield Funds

is avoidable, he is not required to avoid the transfer received by the initial transferee before

asserting an action against subsequent transferees.  *IBT Int'l Inc. v. Northern (In re Int'l Admin*

*Servs., Inc.),* 408 F.3d 689, 706–07 (11th Cir. 2005).  The Trustee is free to pursue any of the

immediate or mediate transferees, and nothing in the statute requires a different result.  *Id.*

The Trustee pleaded the avoidability of the initial transfers (from BLMIS to the Fairfield

Sentry) by adopting by reference the entirety of the complaint filed against the Fairfield Sentry in

adversary proceeding 09-1239 ("Fairfield Complaint").  (Am. Compl. ¶ 89).  Whether the

Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule

9(b).  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee,
> applicable Second Circuit precedent instructs courts to adopt a more liberal view
> since a trustee is an outsider to the transaction who must plead fraud from second-
> hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of
> personal knowledge is compounded with complicated issues and transactions that
> extend over lengthy periods of time, the trustee's handicap increases, and even
> greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)

(cleaned up).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion." The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services

incorporates by reference the complaints against Kingate and Fairfield, including the allegations

concerning the avoidability of the initial transfers, and further alleges the avoidability of these

transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and

Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Amended Complaint was

filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases

within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrestar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfers due to the Fairfield Funds' knowledge of BLMIS fraud.  (Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

EFG Defendants object not to the adoption of the Fairfield Amended Complaint, nor to the adequacy of the pleadings concerning the avoidability of the initial transfers.  Rather, the

EFG Defendants argue that the Trustee fails to show that what the EFG Defendants received from the Fairfield Funds was BLMIS customer property. (Mem. L. 29, ECF No. 104).

**BLMIS Customer Property**

The Trustee has pleaded that, based on its investigations to date, "the Fairfield Sentry-EFG Bank Subsequent Transfers total $187,418,854." (Am. Compl. ¶ 92). Following transfers from Fairfield Sentry, "Fairfield Sigma transferred at least $7,367,027 to EFG Bank" and "Fairfield Lambda transferred at least $657,379 to EFG Bank." (*Id.* ¶¶ 96–97, 101–02). The Trustee has pleaded based on its investigations to date that "the Fairfield Sentry-EFG Monaco Subsequent Transfers total $5,045,022." (*Id.* ¶ 106). The Trustee has likewise pleaded that the "Fairfield Sentry-EFG Bahamas Subsequent Transfers total $96,152,343" and that "the Fairfield Sigma-EFG Bahamas Subsequent Transfers total at least $1,802,938." (*Id.* ¶¶ 110, 114).

The exhibits attached to the Amended Complaint provide EFG Defendants with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); (Am. Compl. Ex. C) (indicating the dates and amounts of the transfers from Fairfield Sentry to EFG Bank); (*Id.* Exs. D, E) (indicating the dates and amounts of the transfers from Fairfield Sentry to Fairfield Sigma and from Fairfield Sigma to EFG Bank); (Am. Compl. Ex. F, G) (indicating the dates and amounts of the transfers from Fairfield Sentry to Fairfield Lambda and from Fairfield Lambda to EFG Bank); (*Id.* Ex. H) (indicating the dates and amounts of the transfers from Fairfield Sentry to EFG Monaco); (*Id.* Exs. I, J) (indicating the dates and amounts of the transfers from Fairfield Sentry and Fairfield Sigma to EFG Bahamas); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing for failure to plausibly imply that the initial transferee made any subsequent transfers.). The Amended Complaint alleges that since the each of the Fairfield

Funds "invested all or substantially all of its assets into the BLMIS Ponzi scheme," all property they transferred to EFG Defendants was BLMIS Customer Property. (Am. Compl. ¶¶ 95, 100, 105).

EFG Defendants argue that certain transfers must have been composed of non-customer property since Fairfield Sentry had not received sufficient funds from BLMIS prior to the date of the transfer from Fairfield Sentry to EFG Defendants. This Court has already held that the calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation. In order to ultimately determine how the initial and subsequent transferees spent the millions of dollars they received from BLMIS, this Court would need to review financial documents in order to trace the BLMIS monies to all of the initial transferees' principals, insiders, creditors, and customers.

Undoubtedly, the Court will do this tracing and calculation at a later stage of litigation. At this stage, the Trustee need only assert plausible allegations that EFG Defendants received BLMIS monies.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Amended Complaint plausibly pleads that EFG Defendants received customer property because the Fairfield Funds did not have other property to give.

**Section 546(e) does not bar the avoidance of the Initial Transfers to the Fairfield Funds**

Section 546(e) protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer—those transfers from BLMIS to the feeder funds. *Picard v. BNP Paribas S.A.* (*In*

*re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).  Subsequent transferees are also entitled

to raise a § 546(e) defense against Trustee's recovery of the initial transfer funds.  *Picard v.*

*Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL

3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).  To the extent that the safe harbor bars the

Trustee from collecting the initial transfer, he would also be barred from collecting any

subsequent transfers.

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the

Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers

qualified as payments made "in connection with" securities contracts between BLMIS and its

customers.  *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d

Cir. 2014).  However, the safe harbor does not apply, by its plain terms, to transfers where the

transferee is complicit in BLMIS' fraud.  *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No.

22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).  This is because "any

transferee who knew the transfers it received from Madoff Securities contained only stolen

proceeds also knew those transfers were neither settlement payments [n]or transfers in

connection with a security agreement" and therefore, § 546(e) cannot apply.[2]  *Id.*

> The safe harbor was intended, among other things, to promote the reasonable
> expectations of legitimate investors.  If an investor knew that BLMIS was not
> actually trading securities, he had no reasonable expectation that he was signing a
> contract with BLMIS for the purpose of trading securities for his account.  In that
> event, the Trustee can avoid and recover preferences and actual and constructive
> fraudulent transfers to the full extent permitted under state and federal law.

---

[2] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out
any atextual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded
that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply
as a matter of its express terms."  *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022
WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal

citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re*

*BLMIS*), 12 F.4th 171 (2d Cir. 2021)).  By holding that the affirmative defense provided by §

546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do

not prevent the Trustee from clawing back complicit parties' ill-gotten gains.  The district court

has already determined that "those defendants who claim the protections of Section 546(e)

through a Madoff Securities account agreement but who actually knew that Madoff Securities

was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their

motions to dismiss the Trustee's claims on this ground must be denied."  *Cohmad*, No. 12 MC

115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy*

*Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3,

2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud,

Section 546(e) d[oes] not apply as a matter of its express terms.").

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard*

*v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767

(S.D.N.Y. Nov. 3, 2022).  The Trustee has alleged that Fairfield Sentry knew the payments it

received from BLMIS were neither settlement payments nor payments in connection with a

securities contract.  "The safe harbor was intended, among other things, to promote the

reasonable expectations of legitimate investors.  If an investor knew that BLMIS was not

actually trading securities, he had no reasonable expectation that he was signing a contract with

BLMIS for the purpose of trading securities for his account.  In that event, the Trustee can avoid

and recover preferences and actual and constructive fraudulent transfers to the full extent

permitted under state and federal law."  *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R.

13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds the district court's holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; (*see also* Fairfield Compl. ¶ 320) ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 321) ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 322) ("FIFL had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 323) ("Stable Fund had actual knowledge of the fraud at BLMIS"); (Fairfield Compl. ¶ 324) ("FG Limited had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 325) ("FG Bermuda had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 326) ("FG Advisors had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 327) ("Fairfield International Managers had actual knowledge of

the fraud at BLMIS"); (Fairfield Compl. ¶ 328 ) ("FG Capital had actual knowledge of the fraud

at BLMIS"); (Fairfield Compl. ¶ 329) ("Share Management had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 9) ("It is inescapable that FGG partners knew BLMIS was not

trading securities. They knew BLMIS's returns could not be the result of the split strike

conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities and options trading

volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades,

which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and

lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or

custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They

knew their clients and potential clients raised numerous due diligence questions they would not

and could not satisfactorily answer. They knew Madoff would refuse to provide them with

honest answers to due diligence questions because it would confirm the details of his fraud.

They knew Madoff lied about whether he traded options over the counter or through the

exchange. They knew they lied to clients about BLMIS's practices in order to keep the money

flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

      "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that

Fairfield Sentry had actual knowledge that BLMIS was not trading securities.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–7 (Bankr. S.D.N.Y. Aug. 6, 2021).  Where § 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable."  *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).  The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

In *Fairfield III*, this Court applied the safe harbor to redemption payments made by Fairfield Sentry to its shareholders.  *Fairfield III* is inapplicable in this case for two reasons.  First, and most obviously, *Fairfield III* is a holding in Fairfield Sentry's chapter 15 case, which is not binding on the Court in this adversary proceeding; whereas the district court's decision in *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013), which holds that the safe harbor does not apply in this case, is binding on the Court on this issue.  Second, the issue in *Fairfield III* is not comparable.  The Court found that the plaintiffs had not met their pleading burden and were not permitted to amend their complaints.  *Fairfield III*, 2020 WL 7345988, at *9 (Bankr. S.D.N.Y. Dec. 14, 2020) ("[T]he Citibank Complaint alleges that the [Fairfield] Funds were duped, believing that their BLMIS investments were worth what the BLMIS monthly statements showed. The Funds were the transferors and if they were duped, they could not have intended to 'hinder, delay or defraud' the Funds' other creditors by redeeming investments at prices they believed to be accurate.") (emphasis added).  In *Fairfield III*, Fairfield Sentry was the initial transferor, not the initial transferee as it is here.  And the Court did not rule on whether the

"knowledge exception" to the safe harbor applied.  Here, the Trustee has sufficiently plead

Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550."  *Id.*

**Good Faith Defense**

EFG Defendants argue that "a trustee may not recover from a subsequent transferee who

took for value, in good faith, and without knowledge of the voidability of the transfer."  (Mem.

L. 32, ECF No. 104).

### i.  *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value."  *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special

Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005).  In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received.  The Amended Complaint contains no mention of EFG Defendants exchanging shares for consideration.  (Am. Compl. ¶¶ 85–118).  Therefore, the "value" defense is not asserted on the face of the Amended Complaint.

EFG Defendants argues that the payments they received were given in exchange for the redemption of shares in the Fairfield Funds.  (Mem. L. 32, ECF No. 104).  If EFG Defendants knew at the time they redeemed shares that the shares were worthless, then they did not receive the subsequent transfer funds "for value" as is required under § 550.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry Lt*d. v. Citibank, N.A. London, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust.").  It has not yet been determined whether EFG Defendants knew if the shares they redeemed from the Fairfield Funds had value.

 "Value" is Defendant's burden to plead and prove.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Whether the EFG Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

### ii.  *Good Faith*

Where, in light of surrounding circumstances, a transferee should have known of the debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith, unless an investigation into the debtor's financial condition actually discloses no reason to

suspect financial trouble.  2 Bankruptcy Desk Guide § 19:105.  The District Court recently

explained that good faith is a fact-intensive inquiry that almost always requires a trial: "[t]he

Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th

171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard

requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes

into account the disparate circumstances of differently-situated transferees.'"  *In re BLMIS, LLC*,

Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can

only be made based on the entirety of the factual record after discovery . . . ."  *Id.* (internal

quotation omitted).

  The burden of proving good faith falls squarely on the EFG Defendants and this Court

cannot make a determination on Defendants' affirmative defense until after a fact-intensive

inquiry.  Discovery is required on this issue.

### iii. Knowledge of the Voidability

  Good faith is linked with whether one had knowledge of the voidability of the transfer.

*Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does

not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of

the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d

217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of

a complaint, the Court must deny the Defendants' motion on this element.  Additionally, §

550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead

and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into 1) what the

Defendants subjectively knew; "whether these facts put the transferee on inquiry notice of the

fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would

have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud; and whether "diligent inquiry by [Defendants] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

**Dated: April 26, 2023**
**Poughkeepsie, New York**

Page **30** of **30**